UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LORI A. GILL-DRATYON,

                  *Plaintiff*,

      v.

NEW YORK STATE EDUCATION
DEPARTMENT, MOUNT VERNON CITY
SCHOOL DISTRICT, CRYSTAL
WATERMAN, *and* KEITH MCCALL,

                  *Defendants*.

No. 23-CV-10259 (KMK)

ORDER & OPINION

---

Appearances:

Lori A. Gill-Drayton
Bronx, NY
*Pro se Plaintiff*

Elizabeth Renee McCullough-Sanden, Esq.
New York Office of Attorney General
New York, NY
*Counsel for Defendant New York State Education Department*

Eric James Marshall, Esq.
Law Office of Eric J. Marshall
New York, NY
*Counsel for Defendants Mount Vernon City School District, Crystal Waterman, and Keith McCall (in his individual capacity)*

Ximena Castro, Esq.
Gregory Ainsley, Esq.
New York State United Teachers Office of General Counsel
New York, NY
*Counsel for Defendant Keith McCall (in his capacity as a union official)*

KENNETH M. KARAS, United States District Judge:

Lora A. Gill-Drayton ("Plaintiff"), proceeding pro se, brings this Action against the New York State Education Department ("NYSED"), the Mount Vernon City School District ("Mount Vernon"), Dr. Crystal Waterman ("Waterman"), and Keith McCall ("McCall")[1] (collectively, "Defendants"), alleging discrimination for failure to accommodate, retaliation, and hostile work environment in violation of Titles I and II of the Americans with Disabilities Act of 1993 ("ADA"), 42 U.S.C. § 12101 et seq., the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 et seq., Title VII of the Civil Rights Act of 1964 ("Title VII), 42 U.S.C. § 2000e et seq., and the New York Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 et seq.[2]  (See

---

[1] The Court will refer to Mount Vernon, Waterman, and McCall (in his individual capacity) collectively as "District Defendants."

[2] Defendants argue that, because Plaintiff raises her Rehabilitation Act, Title VII, and ADA Title II claims only in her opposition briefing, they must be dismissed.  (See NYSED Reply Mem. in Supp. ("NYSED Reply") (Dkt. No. 37) 5–8; District Defs' Reply Mem. in Supp. ("District Reply") (Dkt. No. 38) 4–5; McCall Reply Mem. in Supp. ("McCall Reply") (Dkt. No. 42) 1–4.)  While "[a] pro se plaintiff may not raise 'entirely new' causes of action for the first time in [her] opposition papers, . . . the Court may consider new claims appearing for the first time in briefing if 'the claims could have been asserted based on the facts alleged in the complaint.'"  Davila v. Lang, 343 F. Supp. 3d 254, 267–68 (S.D.N.Y. 2018) (quoting Vlad-Berindan v. MTA N.Y.C. Transit, No. 14-CV-675, 2014 WL 6982929, at *5 (S.D.N.Y. 2014) (citing Rosado v. Herard, No. 12-CV-8943, 2013 WL 6170631, at *3 (S.D.N.Y. Nov. 25, 2013))); see also Lang v. N.Y.C. Health and Hosps. Corp., No. 12-CV-5523, 2013 WL 4774751, at *4 (S.D.N.Y. Sept. 5, 2013) (considering new claims raised in opposition papers because the allegations "simply articulat[e] additional claims that [the pro se plaintiff's] original complaint could have been construed to allege") see Mathie v. Goord, 267 F. App'x 13, 14 (2d Cir. 2008) (affirming that a new constitutional challenge raised in opposition briefing was properly dismissed because the complaint did not "encompass that claim."); Mira v. Argus Media, No. 15-CV-9990, 2017 WL 1184302, at *3 n.4 (S.D.N.Y. Mar. 29, 2017) (declining to review claims raised in a pro se plaintiff's opposition briefing because the allegations went "well beyond merely elaborating on the facts alleged in the Complaint and apparently are intended to support new legal theories").  Here, Plaintiff's Rehabilitation Act, Title VII, and ADA Title II claims could have, and indeed are, asserted based on the facts alleged in the Complaint.  Accordingly, the Court will consider these claims.

*generally* Compl. (Dkt. No. 1).)  Before the Court are Defendants' Motions to Dismiss.  (*See* Mount Vernon Not. of Mot. (Dkt. No. 23); NYSED Not. of Mot. (Dkt. No. 29); McCall Not. of Mot. (Dkt. No. 33).)  For the reasons set forth below, the Motions are granted.

## I.  Background

### A.  Materials Considered

"'When considering a motion to dismiss, the Court's review is confined to the pleadings themselves,' because 'to go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 56.'"  *Watson v. New York*, No. 22-CV-9613, 2023 WL 6200979, at *1 (S.D.N.Y. Sept. 22, 2023) (alterations adopted) (quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)).  "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment."  *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . ., documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (internal quotation marks and citation omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken.'" (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

Additionally, when reviewing a complaint submitted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the

allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4

n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks and citation omitted), including

"documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-

4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics and citation omitted),

statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion

conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2

(E.D.N.Y. Sept. 19, 2013), "documents either in [the plaintiff's] possession or of which [the]

plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282

F.3d 147, 153 (2d Cir. 2002) (quotation marks and citation omitted), and "[plaintiff's] opposition

memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov.

17, 1997) (citing *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)).

Because Plaintiff is proceeding pro se, the Court will consider the documents attached to

her Complaint and briefing. *See Barkai v. Mendez*, 629 F. Supp. 3d 166, 175 (S.D.N.Y. 2022)

(considering exhibits attached to pro se complaint when deciding motion to dismiss); *see also*

*Floyd v. Rosen*, No. 21-CV-1668, 2022 WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering

exhibits attached to pro se opposition memorandum).

Defendants also attach exhibits to their briefing. While most of these exhibits are

duplicative of those of Plaintiff, some are not. Of those submissions, the Court takes judicial

notice of Plaintiff's New York State Division of Human Rights ("NYSDHR") complaint,

("NYSDHR Charge") (Dkt. No. 29-4), and a letter from the U.S. Department of Education

Office of Civil Rights ("OCR") dated August 11, 2023, noting the dismissal of Plaintiff's

allegations, (Dkt. No. 23-2 at 183–85).[3]  The Court does not take judicial notice of the following exhibits attached to Defendants' briefing:  a letter from NYSDHR notifying Mount Vernon of Plaintiff's NYSDHR Charge, (*id.* at 81–93); Mount Vernon's response to Plaintiff's NYSDHR Charge, (*id.* at 94–182); and doctor's notes concerning Plaintiff from 2008 (*id.* 189–92), because they are not filed by Plaintiff, relied upon by her, or "integral to [her] complaint," *Quarles v. N.Y.C. Health & Hosps.*, No. 22-CV-4553, 2023 WL 3880015, at *3 (S.D.N.Y. June 8, 2023) (quoting *Roth v. Jennings*, 389 F.3d 399, 509 (2d Cir. 2007)), *report and recommendation adopted*, 2023 WL 5321034 (S.D.N.Y. Aug. 18, 2023), such that notice would be proper.

B.  Factual Background

    The following facts are drawn from the Complaint and additional materials as discussed above and are assumed true for the purposes of resolving the instant Motions.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

    Plaintiff has been a teacher in the Mount Vernon since 2002, (Compl. 37), and works at Edward Williams Elementary School (the "School"), (*id.* 3).  Plaintiff alleges that she suffers from osteoarthritis and that from 2016 through at least the filing of the Complaint, Defendants failed to accommodate Plaintiff's disability because the school "is not handicap accessible."  (*Id.* 5.)  As a result of Plaintiff's disability and Defendants' failure to accommodate, "Plaintiff is hindered in performing professional duties (inaccessibility to significant areas within school) and

---

[3] "The Court may consider Plaintiff's filings with agencies and any subsequent agency determination when evaluating the instant Motion[s] because they are all matters of public record."  *Lester v. Mount Pleasant Cottage Sch. Union Free Sch. Dist.*, No. 19-CV-5247, 2020 WL 3618969, at *4 n.2 (S.D.N.Y. July 2, 2020) (citing *Troise v. SUNY Cortland NY*, No. 18-CV-734, 2019 WL 3817387, at *4 (N.D.N.Y. Aug. 14, 2019) (taking judicial notice of the plaintiff's NYSDHR complaint, NYSDHR determination, and EEOC's right-to-sue letter)).

has been ostracized from staff meetings, friendships[,] and conversations." (*Id.*)  Plaintiff points

to staff events and meetings that she has been unable to attend due to her disability.  (*See, e.g.*,

*id.* 55 (an email dated April 10, 2023, inviting teachers to cake in the teachers' lounge); *id.* 59

(an email dated February 7, 2023, regarding a copy machine malfunction and requesting that

teachers use a copy machine in a different part of the School).)

On January 22, 2019, one of Plaintiff's students hit her knee with a chair, resulting in

significant pain and swelling.  (*Id.* 37.)  On April 30, 2019, Plaintiff had an independent medical

examination in relation to a workers' compensation claim stemming from the January 22, 2019,

incident.  (*Id.* 38.)  According to medical records, from April 12, 2019, to June 28, 2019,

Plaintiff saw a psychotherapist to address "a lot of stress at work" that had been building for

years.  (*Id.* 10–18.)

On October 12, 2020, Plaintiff was examined by a doctor who diagnosed her with

osteoarthritis in her left knee.  (Dkt. No. 28-1 at 5.)  On April 19, 2023, Plaintiff filed a

complaint with OCR against the Mount Vernon City School District related to the inaccessibility

of the School's main entrance, second-floor annex, and faculty bathroom.  (Compl. 49.)  On May

11, 2023, OCR notified Plaintiff that it was opening an investigation into her allegations.  (*Id.*)

On March 28, 2023, Plaintiff filed a complaint with NYSDHR alleging that she had a

"permanent[] disability due to severe knee injuries" for the last ten years.  (NYSDHR Charge 4.)

She alleged that the School is not handicap accessible, as evidenced by her inability to bring her

walker into the staff bathroom, which lacks a railing and has a low toilet and heavy door.  (*Id.*)

Plaintiff noted that her mail and the copy machine are on the third floor and that there is no

elevator access.  (*Id.*)  Plaintiff also alleges that "the discrimination is clear" as she received an

unfounded poor evaluation from the assistant principal and that Waterman "allowed another

teacher to call the police and force [Plaintiff] to give [her] parking space to another teacher even though [Plaintiff] [is] the only handicapped staff member." (*Id.*)  Finally, Plaintiff alleged that there were many instances of her computer not working "in spite of many work orders submitted [regarding the computer]" and that she was "left out of numerous committee meetings due to [a lack of] coverage." (*Id.*)  Plaintiff also alleges that McCall, "in his capacity as a union official[,] breached his duty of fair representation when he either ignored meritorious grievances that were brought to his attention by [] Plaintiff or at times processed [] Plaintiff's complaint in a perfunctory manner." (Pl's Mem. in Opp. ("Pl's McCall Opp.") (Dkt. No. 40) 3.)  On August 11, 2023, OCR dismissed Plaintiff's complaint because of the parallel investigation by NYSDHR.  (*See* Dkt. No. 23-2 at 183–85.)

In October 2023, Plaintiff notified Waterman via email twice that she was not able to participate in certain meetings due to her disability, to which Waterman responded that the meetings would be relocated to accommodate Plaintiff.  (*See* Compl. 51, 60–61.)  Plaintiff also faced "constant technology issues" between September 2023 and November 2023, as evidenced by emails between Plaintiff, Waterman, and Mount Vernon staff.  (*See id.* 62–68, 71–73.)

On November 1, 2023, Plaintiff received a right to sue from the EEOC dated October 31, 2023.  (*See* Dkt. No. 1-1; Compl. 6.)

B.  Procedural Background

Plaintiff initiated this Action on November 20, 2023.  (*See generally* Compl.)  On December 5, 2023, Plaintiff was granted in forma pauperis status.  (Dkt. No. 4.)  On March 18, 2024, District Defendants filed their Motion.  (District Not. of Mot.; District Defs' Mem. in Supp. of Mot. ("District Mem.") (Dkt. No. 23-1).)  On March 21, 2024, the Court denied Plaintiff's application for pro bono counsel without prejudice.  (*See generally* Dkt. No. 26.)  On

March 28, 2024, Plaintiff filed her Opposition to District Defendants' Motion.  (*See* Pl's Mem. in. Opp. ("Pl's District Opp.") (Dkt. No. 28).)  On April 5, 2024, NYSED filed its Motion. (NYSED Not. of Mot.; NYSED's Mem. in Supp. of Mot. ("NYSED Mem.") (Dkt. No. 29-1).) On April 26, 2024, McCall filed his Motion.  (*See* McCall Not. of Mot.; McCall's Mem. in Supp. of Mot. ("McCall Mem.") (Dkt. No. 33-3).)  On May 2, 2024, Plaintiff filed her Opposition to NYSED.  (*See* Pl's Mem. in Opp. ("Pl's NYSED Opp.") (Dkt. No. 34).)  On May 20, 2024, NYSED replied.  (*See* NYSED Reply.)  On May 28, 2024, District Defendants replied, (*see* District Reply), and Plaintiff filed her Opposition to McCall, (*see* Pl's McCall Opp.).  Finally, McCall replied on June 17, 2024.  (*See* McCall Reply; Affirmation of Ximena Castro (Dkt. No. 41).)

Between briefing, on May 9, 2024, Plaintiff belatedly filed a letter requesting the Court deny Defendants' request for a pre-motion conference on their Motions.  (*See* Dkt. No. 35.)  On May 14, 2024, the Court noted via memo endorsement that it had already granted Defendants leave to file their Motions and that Plaintiff's opposition to NYSED's Motion was signed by "Outside Plug LLC," an "Advocate/Legal Consultant."  (*See* Dkt. No. 36 at 5 (citing Pl's NYSED Opp. 1).)  Because unlicensed laymen are not permitted to represent others, the Court directed Plaintiff to submit a sworn affidavit concerning whether she received assistance in drafting any of her submissions.  (*See id.*)  On May 28, 2024, Plaintiff filed an affirmation in which she averred that Outside Plug LLC "is merely a company owned by [her] spouse" and neither "[her husband, Andre Drayton ("Drayton"),] [n]or [any] other person assist[ed] [Plaintiff] in drafting" the Complaint or "g[a]ve [her] legal advice."  (Dkt. No. 39 ("Pl's Aff.") at 1.)

There are reasons to question the veracity of Plaintiff's affirmation.  Many documents submitted by Plaintiff clearly indicate that she was "represented" by Drayton at virtually every

proceeding prior to this Action.  (*See, e.g.*, Compl. 22 (noting that Drayton "represents [Plaintiff] in connection with" Plaintiff's complaint to the NYSDHR); *id.* 69 (in a letter to the EEOC New York District office, Drayton wrote that he was "a legal consultant and authorized to represent [Plaintiff]"); *see generally id.* (for email exhibits, indicating that Plaintiff forwarded emails to Drayton from July to November 2023).)  Plaintiff claims that her email address on the docket and on her filings in this Action is that of her husband's company, "Outsideplug2020llc@gmail.com," because she wants "to avoid using [her] personal email." (Pl's Aff. 1.)  While that may be true, it does not allay the Court's concern that Drayton's "representation" of Plaintiff did not end prior to filing of the Complaint in this Action.

"The principal rationale for ordinarily requiring representation by a licensed attorney is that 'the conduct of litigation by a nonlawyer creates unusual burdens not only for the party he represents but as well for his adversaries and the court.'"  *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (quoting *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983)).[4]  Accordingly, by dint of their pro se status, pro se litigants are "afforded a substantial degree of solicitude," *Dos Santos v. Assurant, Inc.*, 625 F. Supp. 3d 121, 129 (S.D.N.Y. 2022) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010)), and "the exact degree of solicitude that should be afforded to a pro se litigant in any given case depends upon a variety of factors," *Azzarmi v. Neubauer*, No. 20-CV-9155, 2024 WL 4275589, at *3 (S.D.N.Y. Sept. 24,

---

[4] Plaintiff claims that *Lattanzio* stands for the proposition that "a pro se litigant may receive assistance from an unlicensed layman, such as her husband, so long as the assistance does not cross the line into unauthorized practice of law."  (Pl. Aff. 1.)  Nothing in *Lattanzio* can be construed to support Plaintiff's assertion.  *Lattanzio* concerns whether a sole member limited liability company may appear pro se—the Second Circuit held that it may not.  *See Lattanzio*, 481 F.3d at 139–40.  Nowhere in that case did the Second Circuit discuss married couples helping each other in pro se litigation or "the line" between authorized and unauthorized practice of law, or anything approaching Plaintiff's read of the case.

2024)).  Solicitude may be withdrawn if a pro se plaintiff's "submissions are 'drafted with the

substantial assistance of an attorney.'" *Dos Santos*, 625 F. Supp. 3d at 129 (quoting *Askins v.

Metro Transit Auth.*, No. 19-CV-4927, 2020 WL 1082423, at *4 (S.D.N.Y. Mar. 5, 2020)).

The Court will give Plaintiff the benefit of the doubt, but notes that if the Court becomes

convinced that Plaintiff is being represented by Drayton, she may lose the solicitude that she

currently enjoys.  *See Azzarmi*, 2024 WL 4275589, at *3 (withdrawing solicitude for a pro se

litigant); *Davis v. Sedgwick Claims Mgmt. Servs.*, No. 21-CV-7090, 2022 WL 153251, at *1

(S.D.N.Y. Jan. 18, 2022) (noting that "special solicitude in pro se cases has its limits" (citation,

quotation marks, and italics omitted)).

## II.  Discussion

### A.  Standard of Review

#### 1.  12(b)(1)

"[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by

a party or by the court sua sponte.  If subject matter jurisdiction is lacking, the action must be

dismissed."  *Biener v. Credit Control Servs., Inc.*, No. 21-CV-2809, 2023 WL 2504733, at *3

(S.D.N.Y. Mar. 14, 2023) (alteration in original) (quoting *Lyndonville Sav. Bank & Tr. Co. v.

Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000)); *see also Wells Fargo Bank v. 5615 N. LLC*,

No. 20-CV-2048, 2022 WL 15523689, at *3 (S.D.N.Y. Oct. 27, 2022) (citing *Lyndonville*, 211

F.3d at 700–01).  "A federal court has subject matter jurisdiction over a cause of action only

when it has authority to adjudicate the cause pressed in the complaint."  *Bryant v. Steele*, 25 F.

Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted).  "Determining the existence of

subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of

subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or

constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d

Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762

F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question"

(citation omitted)).

### 2.  12(b)(4)

"Rule 12(b)(4) allows for the dismissal of a complaint for 'insufficient process.'" *Close

v. Bedford Cent. Sch. Dist.*, No. 23-CV-4595, 2024 WL 3427213, at *4 (S.D.N.Y. July 16, 2024)

(quoting *Abram v. Town of Cheektowaga Police Dep't*, No. 18-CV-1267, 2020 WL 3513677, at

*2 (W.D.N.Y. June 29, 2020) (quoting Fed. R. Civ. P. 12(b)(4))).  "An objection under Rule

12(b)(4) concerns the form of the process rather than the manner or method of its service," *Grp.

One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 332 n.8 (E.D.N.Y. 2021)—i.e., such "[o]bjections

. . . must identify substantive deficiencies in the summons, complaint, or accompanying

documentation," *Abram*, 2020 WL 3513677, at *2; *see Jackson v. City of New York*, No. 14-CV-

5755, 2015 WL 4470004, at *4 (S.D.N.Y. June 26, 2015) ("[A] Rule 12(b)(4) motion is proper

only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision

incorporated by Rule 4(b) that deals specifically with the content of the summons.").  Where

"movants do not assert noncompliance with Rule 4(b), dealing with the content of the summons,

or otherwise challenge the form of the process . . . their motion is not governed by Rule

12(b)(4)." *Jackson*, 2015 WL 4470004, at *4.

### 3.  12(b)(6)

The Supreme Court has held that while a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the

Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration

adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550

U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if

a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[]

complaint must be dismissed."  *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration

adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at

678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading

regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with

nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and

"draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)); *Medina v. AAM 15 Mgmt. LLC*, --- F. Supp. 3d ----, 2024 WL 4307816, at *5 (S.D.N.Y. Sept. 26, 2024) (same).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); se*e also Gamboa v. Regeneron Pharms., Inc.*, 719 F. Supp. 3d 349, 352 (S.D.N.Y. Feb. 27, 2024) (same).

Moreover, where, as here, a plaintiff proceeds pro se, the Court must construe his submissions "liberally and interpret it to raise the strongest arguments that it suggests." *Ashmeade v. Amazon.com*, No. 23-CV-4331, 2024 WL 4266391, at *7 (S.D.N.Y. Sept. 23, 2024) (alterations adopted) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (same).  Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

B.  Analysis

The Court first addresses Defendants' arguments as they relate to liability, then turns to whether Plaintiff has plausibly stated any claims.

    1.  Immunity

NYSED argues that Plaintiff's ADA and NYSHRL claims are barred by the Eleventh

Amendment.  (*See* NYSED Mem. 4–6.)

    "[A]s a general rule, state governments may not be sued in federal court unless they have

waived their Eleventh Amendment immunity, or unless Congress has abrogated the states'

Eleventh Amendment immunity . . . ."  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)

(internal quotation marks and alterations omitted).  "The immunity recognized by the Eleventh

Amendment extends beyond the states themselves to state agents and state instrumentalities that

are, effectively, arms of a state."  *Id.*  (alteration omitted).  "New York has not waived its

Eleventh Amendment immunity to suit in federal court."  *Watson v. New York*, No. 22-CV-9613,

2022 WL 17067935, at *2 (S.D.N.Y. Nov. 17, 2022) (citing *Trotman v. Palisades Interstate*

*Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977)).  "It is well established that [NYSED] is an

agency of the State of New York, and thus an arm of the state for purposes of sovereign

immunity."  *D.J. by Comfort v. Corning-Painted Post Area Sch. Dist.*, 722 F. Supp. 3d 148, 158

(W.D.N.Y. 2024) (quotation marks and citation omitted).  "[I]t is [also] well established that

Congress has not validly abrogated the states' sovereign immunity for claims arising under Title

I [of the ADA]" and that "New York [has not] waived its immunity."  *Yerdon v. Poitras*, 120

F.4th 1150, 1153 (2d Cir. 2024).  Finally, Plaintiff's NYSHRL claim is barred "because New

York has not waived its Eleventh Amendment immunity for NYSHRL suits in federal courts."

*Deadwiley v. New York State Off. of Children & Family Servs.*, 97 F. Supp. 3d 110, 116

(E.D.N.Y. 2015); *McCoy v. Admin. for Children's Servs.*, No. 23-CV-3019, 2024 WL 4379584,

at *4 n.2 (E.D.N.Y. Aug. 9, 2024) (same).  However, Congress has abrogated state sovereign

immunity under the Rehabilitation Act and Title VII.  *See Ballentine v. New York*, No. 24-CV-

4615, 2024 WL 4870833, at *3 (S.D.N.Y. Nov. 21, 2024) (noting that "the Rehabilitation Act abrogates Eleventh Amendment immunity for claims against the State of New York when the state has knowingly waived this right by accepting federal funds"); *Cuomo v. Off. of New York State Attorney Gen.*, --- F. Supp. 3d ----, 2024 WL 4593407, at *7 (E.D.N.Y. Oct. 28, 2024) ("Congress[] abrogat[ed] . . . state sovereignty in cases brought under Title VII . . . ."). While Plaintiff asserts an ADA Title II claim against NYSED, (*see* Pl's NYSED Opp. 8–9), the Eleventh Amendment bars this claim, despite the fact that "Congress has unambiguously purported to abrogate states' immunity from Title II claims," *T.W. v. New York State Bd. of Law Exam'rs*, 110 F.4th 71, 82 (2d Cir. 2024) (quoting *Bolmer v. Oliveira*, 594 F.3d 134, 146 (2d Cir. 2010)), *cert. pending*, No. 24-714 (Jan. 3, 2025). This is because the "ADA 'unambiguously limits employment discrimination claims to Title I.'" *Yerdon*, 120 F.4th at 1153 (quoting *Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 169–71 (2d Cir. 2013)). Because this dispute clearly involves allegations of employment discrimination, Plaintiff's passing reference to Title II fails to shift the analysis, or give rise to a separate cause of action, and her ADA claim against NYSED must fall under Title I and is therefore barred. *See id.* (holding that a "dispute [that] involves allegations of employment discrimination . . . [is] clearly governed by Title I of the ADA").

Accordingly, sovereign immunity bars Plaintiff's ADA Title I, ADA Title II, and NYSHRL claims, but not her Rehabilitation Act claim.

## 2. Individual Liability

At the outset, to the extent that Plaintiff's Title VII, ADA, and Rehabilitation Act claims are asserted against Waterman and McCall, these claims must be dismissed because there is no

individual liability under those statutes.[5]  *See id.* at 1155 ("There is no individual liability under

the ADA." (alterations adopted) (quoting *Iwelu v. N.Y. State Off. of Mental Health*, No. 22-3096,

2024 WL 2175938, at *2 n.5 (2d Cir. May 15, 2024))); *Vora v. New York City Dep't of Educ.*,

No. 22-CV-10891, 2024 WL 1116312, at *3 (S.D.N.Y. Mar. 14, 2024) ("Title VII, the ADA, and

the Rehabilitation Act do not impose liability on individuals.").

    The Court also notes that "Title VII prohibits discrimination against an employee based

on that employee's 'race, color, religion, sex, or national origin,'" *Kirkland-Hudson v. Mount*

*Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 448 (S.D.N.Y. 2023) (quoting 42 U.S.C. § 2000e-

2(a)), and that Plaintiff makes no reference to a protected activity under Title VII, (*see generally*

Compl.; Pl's District Opp.; Pl's NYSED Opp.; Pl's McCall Opp.).  Accordingly, because an

individual's disability is not a protected activity under Title VII, *see Shaham v. Vertrax, Inc.*,

No. 21-CV-170, 2023 WL 2600207, at *13 (D. Conn. Mar. 22, 2023) ("Title VII . . . does not

prohibit disability discrimination."), Plaintiff's Title VII claim is dismissed.

    As for McCall, he argues that the Court "lacks subject matter jurisdiction over disputes

between a public sector employees union and a public sector employee."  (McCall Mem. 4.)

Plaintiff does not explicitly refer to the National Labor Relations Act ("NLRA"), Labor

Management Relations Act ("LMRA"), or state law, but does, at various points, refer very

generally to alleged breaches of a collective bargaining agreement and of the duty of fair

representation ("DFR").  (*See* Pl's McCall Opp. 3, 8.)  Interpreting Plaintiff's pleadings to raise

the strongest arguments that they suggest, the Court considers whether Plaintiff has stated a

---

[5] Waterman is the School's principal.  (*See* Compl. 37.)  McCall is an employee of Mount
Vernon.  (District Mem. 2.)

claim pursuant to the NLRA, LMRA, or the state DFR, and concludes that she has failed to state a claim.

First, to the extent Plaintiff asserts a freestanding DFR breach under the NLRA, 29 U.S.C. § 159(a), that claim is dismissed. To state such a claim, "a plaintiff must plead that (1) the union's conduct was 'arbitrary, discriminatory, or in bad faith' and (2) there was a 'causal connection' between the union's wrongful conduct and the member's injuries." *Bledsoe v. N.Y.C. Auth.*, No. 23-CV-00775, 2024 WL 989845, at *6 (E.D.N.Y. Mar. 7, 2024) (quoting *Perkins v. 199 SEIU United Healthcare Workers E.*, 73 F. Supp. 3d 278, 283 (S.D.N.Y. 2014)). The NLRA, however, does not cover public employees. *See Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1075 (2d Cir. 2021) (citing 29 U.S.C. § 152(2)). As Plaintiff is an employee of Mount Vernon, she is a public employee, and the NLRA therefore precludes her from bringing a DFR claim against her union. *See id.* at 1076 (affirming dismissal of DFR claim against union where plaintiff was a public employee not covered by the NLRA).

To the extent Plaintiff's DFR claim is brought pursuant to Section 301 of the LMRA, it fails for the same reason because "there is no federal subject matter jurisdiction over a [DFR] claim under the [LMRA] against a public school district or the union representing its employees." *Malcolm v. Assoc. of Supervisors & Admins. of Rochester*, 831 F. App'x 1, 3 (2d Cir. 2020) (summary order) (citing *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009)). Accordingly, because Plaintiff's employer is "a public school district, which is political subdivision of the state of New York and therefore is not an 'employer' within the meaning of the [LMRA]," *id.* (citing 29 U.S.C. § 152(2)), Plaintiff may not proceed under the LMRA.

"Section 209-a(2)(c) of the New York Civil Service Law states that it shall be an improper practice for an employee organization or its agents deliberately to breach its duty of fair representation." *Toro v. City of New York*, No. 12-CV-4093, 2015 WL 1014044, at *8 (E.D.N.Y. Mar. 6, 2015) (quotation marks omitted and alteration adopted) (quoting N.Y. Civ. Serv. Law § 209-a(2)(c)). "[I]n order to establish a claim for breach of the duty of fair representation in violation of New York State Civil Service Law § 209-a(2), it is necessary to show that the union's conduct was arbitrary, discriminatory, or in bad faith." *Id.* (citing *Matter of Civil Serv. Bar Ass'n., Local 237, Int'l Bhd. of Teamsters v. City of New York,* 474 N.E.2d 587, 587 (N.Y. 1984); *Rosenblum v. Bd. of Educ. Great Neck Union Free Sch. Dist.*, 220 N.Y.S.3d 794, 798 (N.Y. App. Div. 2024) (same). Moreover, Plaintiff must produce "substantial evidence" that the union deliberately acted to harm her. *See Calkins v. Police Benevolent Ass'n of N.Y. State Troopers, Inc.*, 864 N.Y.S.2d 655, 655 (N.Y. App. Div. 2008) (stating that a plaintiff opposing summary judgment must produce "substantial evidence of fraud, deceitful action, or dishonest conduct, or evidence of discrimination that is intentional, severe, and unrelated to legitimate [union] objectives" (quotations omitted)); *Roy v. Buffalo Philharmonic Orchestra Soc'y, Inc.*, 161 F. Supp. 3d 187, 193 (W.D.N.Y. 2016) (same), *aff'd*, 682 F. App'x 42 (2d Cir. 2017) (summary order). There is also a four-month statute of limitations on such claims. *See Bledsoe*, 2024 WL 989845, at *6 (citing *Malcolm*, 831 F. App'x at 3–4 (citing N.Y. C.P.L.R. § 217(2))). Plaintiff's Complaint was filed on November 20, 2023, meaning that any allegations and claims that accrued before July 20, 2023, are time-barred. The Complaint contains no allegations regarding McCall, let alone any actions of his while in his role as a union representative. (*See generally* Compl.) In fact, the sum of Plaintiff's allegations regarding McCall is the following: McCall, "in his capacity as a union official[,] breached his duty of fair

representation when he either ignored meritorious grievances that were brought to his attention by Plaintiff or at times processed the Plaintiff's complaint in a perfunctory manner." (Pl's McCall Opp. 3.)

Putting aside whether Plaintiff's claim is timely, and that she has fallen short of establishing that the union or McCall did anything wrong at all, *see Toro*, 2015 WL 1014044, at *8 (dismissing claim for duty of fair representation violation where plaintiff had "fallen short of establishing that the union did anything wrong at all, much less violated its duty of fair representation"), Plaintiff's claim under state law is also barred because "New York law imposes a DFR on *unions*," not individuals, *see Bledsoe*, 2024 WL 989845, at *6 (emphasis added). Here, Plaintiff brings her DFR claim against McCall and includes no allegations that may impute McCall's alleged conduct to the union as a whole. Indeed, the Court has found no cases in which a plaintiff alleges a specific union official violated a DFR; rather, DFR claims are routinely brought against unions, as opposed to individuals. Accordingly, Plaintiff's DFR claim is dismissed.

### 3. Rule 10

District Defendants argue that "Plaintiff failed to include [Mount Vernon] in the list of defendants" in her Complaint, which means that "Plaintiff's process . . . was therefore deficient," and that "[a]s a result of this deficient process," the Court lacks personal jurisdiction over Mount Vernon. (District Mem. 11.)

Rule 10(a) provides that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). Thus, "[if] people are not named in the caption of the complaint, they will not be defendants in the case." *Paul v. Onondoga Cnty. Dist. Att'ys Off.*, No. 23-CV-1385, 2024 WL 445701, at *6 (N.D.N.Y. Feb. 6, 2024) (quotation marks omitted and alteration adopted) (quoting

*Whitley v. Krinser*, No. 06-CV-575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15, 2007)); *see also Harris v. Ganim*, No. 23-CV-1168, 2023 WL 8188667, at *1 n.3 (noting that the court would not consider claims against individuals and entities that were referenced in the pro se plaintiff's complaint because those individuals and entities were not named in the caption of the complaint).  Plaintiff, however, has clearly and obviously complied with Rule 10—on the very first page of the Complaint, she lists "Mount Vernon City School District" as a defendant.  (*See* Compl. 1.)  Further, service was properly executed on District Defendants.  (*See* Dkt. Nos. 15–17.)  Notably, District Defendants cite *nothing*—neither caselaw nor the record—in support of their contention that the Complaint is deficient.  (*See* District Mem. 11.)  The Court need not go further because it finds that Plaintiff complied with Rule 10(a) and because District Defendants have failed to mount a fulsome argument to the contrary.

### 4.  ADA and Rehabilitation Act Claims

#### a.  Failure to Accommodate

"The ADA requires employers to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee], unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business.'"  *Smith v. N.Y.C. Dep't of Educ.*, No. 18-CV-8545, 2019 WL 6307471, at *9 (S.D.N.Y. Nov. 25, 2019) (internal citation omitted) (quoting 42 U.S.C. § 12112(b)(5)(A)).  "Similarly, regulations promulgated under the Rehabilitation Act by the Department of Health and Human Services require recipients of federal funds to make *reasonable accommodation* to the known physical or mental limitations of an otherwise qualified handicapped employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program."  *Quadir v. N.Y. State Dep't of Labor*, No. 13-CV-3327, 2016 WL

3633406, at *2 (S.D.N.Y. June 29, 2016) (emphasis in original) (internal quotation marks

omitted and alteration adopted).  To state a claim for failure to accommodate under either the

ADA or the Rehabilitation Act, an employee must allege that:

> (1) [s]he is a person with a disability under the meaning of the Act; (2) an
> employer covered by the statute had notice of [her] disability; (3) with reasonable
> accommodation, the employee could perform the essential functions of the job at
> issue; and (4) the employer has refused to make such accommodations.

*Noll v. Int'l Bus. Mach. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (alterations omitted) (quoting

*McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)); *Quadir*, 2016 WL

3633406, at *2 (same).

District Defendants contend that this claim must be dismissed because Plaintiff has failed

to establish that she requested any accommodation prior to June 28, 2023, as indicated by a

doctor's letter requesting workplace accommodations for Plaintiff.  (*See* District Mem. 19–20

(citing Dkt. No. 28-1 at 45).)  While Plaintiff attaches to her opposition brief doctor's notes from

2017, 2020, and 2021 requesting that Plaintiff have elevator access to accommodate her

disability, (*see* Dkt. No. 28-1 at 47–49), she tenders no allegations that she requested elevator

access in relation to these doctor's notes, or indeed at any time during her employment (see

*generally* Compl.; Pl's District Opp.).  Even assuming that she has a disability within the

meaning of the ADA and Rehabilitation, that Mount Vernon had notice of this disability, and

that there were reasonable accommodations available to facilitate Plaintiff's performance of

essential functions, Plaintiff has failed to make a prima facie showing that Mount Vernon refused

to make such accommodations.  On the contrary, Plaintiff's own allegations in the Complaint

show that when, in October 2022, Plaintiff twice notified Mount Vernon via email that she was

not able to participate in certain meetings due to her disability, Waterman quickly responded that

the meetings would be relocated to accommodate Plaintiff.  (*See* Compl. 51 (showing an email

dated October 28, 2022, where Waterman says that she will move a meeting to accommodate

Plaintiff's not being able to climb stairs); *id.* 60–61 (in response to Plaintiff's request to move a

meeting location, Waterman responds on October 24, 2023, that she "was not aware" of

Plaintiff's disability and that she will relocate meetings to accommodate Plaintiff).)

Accordingly, Plaintiff's failure to accommodate claim must be dismissed.  *See Finnigan v.*

*Mattituck-Cutchogue Union Free Sch. Dist.*, No. 20-CV-2837, 2022 WL 1205426, at *7

(E.D.N.Y. Feb. 28, 2022) (dismissing the plaintiff's failure to accommodate claim under the

ADA because plaintiff did not allege "that the [defendant employer] refused to make

[reasonable] accommodations."), *report and recommendation adopted,* 2022 WL 1205029

(E.D.N.Y. Apr. 22, 2022); *cf. Tieu v. N.Y.C. Econ. Dev. Corp.*, 717 F. Supp. 3d 305, 325–26

(S.D.N.Y. 2024) (finding at summary judgment that plaintiff failed to make out a prima facie

case of disability discrimination where defendants granted plaintiff reasonable accommodations).

### b. Retaliation

"Retaliation claims under . . . the ADA[] and the Rehabilitation Act are analyzed under

the same framework that applies to retaliation claims under Title VII."  *Smith*, 2019 WL

6307471, at *11; *see also Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 538 (S.D.N.Y.

2016) (applying Title VII retaliation analysis to ADEA retaliation claim); *Treglia v. Town of*

*Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (applying Title VII retaliation analysis to ADA

retaliation claim); *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)

(elements of a retaliation claim under the Rehabilitation Act and the ADA are the same).

Accordingly, to plead a retaliation claim under these statutes, a plaintiff must allege "that:

(1) [s]he engaged in an activity protected by the [statute]; (2) the employer was aware of this

activity; (3) the employer took adverse employment action against [her]; and (4) a causal

connection exists between the alleged adverse action and the protected activity." *Treglia*, 313 F.3d at 719.

District Defendants claim that Plaintiff has not "alleged any facts concerning her engagement in any protected activity," (District Mem. 20), but it is obvious that Plaintiff's NYSDHR Charge constitutes a protected activity, *see Maxius v. Mount Sinai Health Sys. Inc.*, No. 21-CV-10422, 2024 WL 4166157, at *8 (S.D.N.Y. Sept. 12, 2024) (noting that a NYSDHR complaint is a protected activity), *appeal pending*, No. 24-2524 (2d Cir. Sept. 25, 2024). Plaintiff alleges that Mount Vernon retaliated against her filing her NYSDHR Charge by "hav[ing] meetings and activities on the upper levels of the building, involv[ing] the local police who forced . . . Plaintiff to relinquish her parking spot, . . . only [having] Plaintiff's mail brought by a third party on three occasions since the initial filing of the complaint, and creat[ing] a hostile work environment" by failing to provide Plaintiff necessary computer access.  (Pl's District Opp. 4–5.)  In the first instance, none of these allegations rises to the level of an adverse employment action, which are circumstances in which "'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 118 (S.D.N.Y. 2022) (quoting *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 224 (E.D.N.Y. 2014)).  Specifically, the Second Circuit has held that inability to access a school computer is a "mere inconvenience[] or annoyance[] that d[oes] not alter [a plaintiff's] employment in a materially adverse way." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 89 (2d Cir. 2015).  In a similar vein, the "loss of [a] free parking space [is] insufficient to support an adverse employment action." *Silva-Markus v. N.Y.C. Dep't of Educ.*, No. 19-CV-4335, 2021 WL 8013767, at *6 (S.D.N.Y. July 26,

2021) (quoting *Sherman v. City of New York*, No. 18-CV-6907, 2020 WL 6873453, at *4 (E.D.N.Y. Sept. 23, 2020)), *report and recommendation adopted*, 2022 WL 736425 (S.D.N.Y. Mar. 11, 2022).  As for the meetings, even if the Court assumed that meetings were held in parts of the building inaccessible to Plaintiff with the purpose of excluding her, such "exclusion[] from meetings . . . do[es] not constitute [an] adverse employment action[]."  *Muniz v. City of New York*, No. 20-CV-9223, 2023 WL 6294169, at *8 (S.D.N.Y. Sept. 27, 2023) (alteration adopted) (quoting *Bickerstaff v. Vassar Coll.*, 354 F. Supp. 3d 276, 280 (S.D.N.Y. 2004)); *see also Kirkland-Hudson*, 665 F. Supp. 3d at 461 (also holding that "exclusion from meetings . . . do[es] not amount to adverse employment actions").  Finally, Plaintiff's allegation that her mail has not been timely delivered since her filing of the NYSDHR Charge does not rise to the level of an adverse employment action, *see, e.g.*, *Forman v. N.Y.C. Dep't of Educ.*, No. 19-CV-8156, 2022 WL 912130, at *10 (S.D.N.Y. Mar. 29, 2022) (holding that "[l]osing access to a work email address would not dissuade a reasonable employee from exercising his or her constitutional rights"), especially when courts have found that complete loss of work mail access is not an adverse action, *cf. Sekyere v. City of New York*, No. 05-CV-7192, 2009 WL 773311, at *4 (S.D.N.Y. Mar. 18, 2009) ("Defendants' delay in providing Plaintiff with an email address . . . [is] not of sufficient significance to amount to . . . adverse changes in the terms and conditions of [p]laintiff's employment.").

Even if these allegations did constitute adverse employment actions, Plaintiff has failed to demonstrate a causal connection between her filing of the NYSDHR charge and these actions. As to the allegations regarding police forcing Plaintiff to relinquish her parking spot, this conduct "occurred years ago (pre-pandemic)."  (Compl. 28.)  Because this incident clearly precedes the NYSDHR charge, it cannot support a retaliation claim.  *See Forrest v. N.Y.C. Hous.*

*Auth.*, No. 22-CV-6480, 2023 WL 3203646, at *10 (S.D.N.Y. May 2, 2023) (noting at summary judgment that an adverse employment action cannot precede a protected activity in a retaliation claim); *Brown v. United Parcel Serv.*, No. 22-CV-762, 2022 WL 17478335, at *7 (N.D.N.Y. Oct. 12, 2022) (collecting cases where courts dismiss a retaliation claim because the adverse employment action preceded the protected activity), *report and recommendation adopted*, 2022 WL 16734876 (N.D.N.Y. Nov. 7, 2022).  Similarly, because Plaintiff's other allegations of adverse action occurred both before and after her filing of the NYSDHR charge, there is no causal link between the alleged adverse employment actions and the protected activity.[6]  (*See* Compl. 70 (Plaintiff's mail has been hand-delivered "for several years."); *id.* 28 (Plaintiff's school computer was "not working throughout the school year (in spite of many work orders

---

[6] Plaintiff's briefing could be read as arguing that the adverse employment action here is decreased frequency in the delivery of her mail.  (*See* Pl's District Opp. 5 ("Waterman . . . only had the Plaintiff's mail brought by a third party on three occasions since the filing of the complaint.").)  Plaintiff has failed to allege how this is more than "a mere inconvenience." *Sorensen v. Wallingford Bd. of Educ.*, 742 F. Supp. 3d 240, 2517 (D. Conn. 2024).  Indeed, this is a far cry from "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities."  *Id.* at 251–52.

Similarly, Plaintiff argues that her ongoing computer problems created a hostile work environment in retaliation to her NYSDHR charge.  (*See* Pl's District Opp. 5.)  A hostile work environment can constitute an adverse employment action under a retaliation claim.  *See Dapson v. City of Rochester, New York*, No. 17-CV-6704, 2019 WL 591692, at *12 (W.D.N.Y. Feb. 12, 2019) ("[A] retaliatory hostile work environment may establish one element of a retaliation claim, namely, that the plaintiff suffered an adverse employment action.").  "A hostile work environment claim requires a showing (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that a specific basis exists for imputing the objectionable conduct to the employer."  *Dixon v. City of New York*, No. 23-CV-8941, 2025 WL 50140, at *10 (S.D.N.Y. Jan. 7, 2025) (citation omitted).  Because Plaintiff fails to allege that ongoing computer problems were "severe or pervasive" harassment, the Court need not decide whether Plaintiff adequately alleges "that a specific basis exists for imputing the objectionable conduct to" Mount Vernon. *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 100–01 (S.D.N.Y. 2024).  For this reason, the allegations concerning ongoing computer problems can neither support a retaliation claim nor form the basis of a full-fledged hostile work environment claim.

submitted)."); *id.* 29 ("[Plaintiff] "was left out of many monthly teacher luncheons that are regularly hosted by different grade-level teachers."); *see also* Pl's District Opp. 4–5 (indicating that these activities occurred before, and continued after, the NYSDHR charge).) *See Darwin v. Newburgh Operations, LLC*, No. 22-CV-872, 2025 WL 104140, at *6 (S.D.N.Y. Jan. 15, 2025) ("It is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in [the] protected activity."). "In essence, 'if an employer's conduct before and after an employee complaint is consistent, the post-complaint conduct is not retaliatory.'" *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 722 (S.D.N.Y. 2020) (quoting *Wright v. N.Y.C. Off-Trac Betting Corp.*, No. 05-CV-9790, 2008 WL 762196, at *5 (S.D.N.Y. Mar. 24, 2008)).

Accordingly, because Plaintiff has failed to make a prima facie case of retaliation, this claim is dismissed. *See Perez v. N.Y. Presbyterian/Weill Cornell Med. Ctr.*, No. 23-CV-6152, 2024 WL 1514216, at *9 (S.D.N.Y. Apr. 8, 2024) (dismissing plaintiff's ADA retaliation claim because plaintiff "[did] not allege[] any adverse action, let alone that any such action was intended to retaliate for protected activity").

### 5. NYSHRL

The Court now turns to Plaintiff's NYSHRL claims. In light of the Court's dismissal of all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over her state-law NYSHRL claims. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction . . . .").

"Once a district court's discretion is triggered under [Section] 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to

exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)

(internal citation and quotation marks omitted); *accord Greenberg v. Visiting Nurse Servs. in

Westchester, Inc.*, No. 23-CV-4252, 2024 WL 4252550, at *11 (S.D.N.Y. Sept. 19, 2024). "[I]n

the usual case in which all federal-law claims are eliminated before trial, the balance of factors to

be considered . . . will point toward declining to exercise jurisdiction over the remaining state-

law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Marcus v.

AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed

before trial, the state claims should be dismissed as well."); *Pitchell v. Callan*, 13 F.3d 545, 547

(2d Cir. 1994) ("It is axiomatic that when all federal claims are eliminated prior to trial, a court

should decline to exercise jurisdiction over any remaining pendent state claims." (quotation

marks omitted)); *Greenberg*, 2024 WL 4252550, at *11–12 (same).

The Court concludes that there is nothing that distinguishes this Action from "the usual

case." *See Cohill*, 484 U.S. at 350 n.7. Plaintiff's federal claims have all been dismissed, *see

Dellutri v. Village of Elmsford*, 895 F. Supp. 2d 555, 575 (S.D.N.Y. 2012) (declining to exercise

supplemental jurisdiction where "th[e] case remains in its initial stages, and the [p]arties have not

yet proceeded to discovery"); *Middleton v. United States*, No. 10-CV-6057, 2012 WL 394559, at

*7 (E.D.N.Y. Feb. 7, 2012) (declining to exercise supplemental jurisdiction because no federal

claims survived a motion to dismiss), and none of the factors that the Supreme Court enunciated

in *Cohill*—"judicial economy, convenience, fairness, [or] comity"—counsels against such

dismissal, 484 U.S. at 350 n.7. Thus, Plaintiff's NYSHRL claims are dismissed.

### III.  Conclusion

For the reasons set forth above, Defendants' Motions are granted and Plaintiff's

Complaint is dismissed without prejudice. If Plaintiff wishes to file an amended complaint

addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order.  Plaintiff is advised that the amended complaint will completely replace, not supplement, the Complaint.  The amended complaint must therefore contain all claims, defendants, and factual allegations that Plaintiff wishes the Court to consider.  If Plaintiff fails to timely file an amended complaint, the dismissed claims may be dismissed with prejudice.  The Clerk of the Court is respectfully directed to terminate the pending Motions.  (Dkt. Nos. 23, 29, 33.)

SO ORDERED.

Dated:    March 20, 2025
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

28